```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                     NASHVILLE DIVISION
```

THE PACE INDUSTRY UNION-         )
MANAGEMENT PENSION FUND, et al., )
                                 )
        Plaintiffs               )
                                 )        No. 3:11-0291
v.                               )        Judge Nixon/Brown
                                 )
DIEKNOWLOGIST, INC., et al.,     )
                                 )
        Defendants               )

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is adopted.

**1. Jurisdiction and Venue:** This action arises under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. § 185. The Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1337. Jurisdiction and venue are not disputed.

**2. Plaintiffs' Theory of the Case:** At all relevant times, pursuant to ERISA Section 515, 29 U.S.C. § 1145, one or more collective bargaining agreements ("Agreement") with PACE Local 4-107, and a Standard Form of Agreement for Participation in the Fund ("Participation Agreement"), Dieknowlogist was required to make monthly benefit payments to the Fund for any and all employees covered by the Agreement and the Participation Agreement. At all relevant times, Dieknowlogist was also bound by the Fund's Amended and Restated Agreement and Declaration of Trust and its Delinquency

Policy. The Fund determined that on or about December 9, 2008, Dieknowlogist effected a "complete withdrawal" from the Fund, as defined in Section 4203 of ERISA, 29 U.S.C. § 1383, resulting in withdrawal liability to the Fund in the amount of $177,881.00, as determined under Section 4201(b) of ERISA, 29 U.S.C. § 1381(b). Pursuant to the Fund's withdrawal liability assessment and payment schedule, Dieknowlogist paid the first two withdrawal liability payments, but failed to make any further payments. Accordingly, Dieknowlogist is liable for the balance of $177,102.38 in withdrawal liability, in addition to other damages to which the Fund is entitled under ERISA. Section 4301(b) of ERISA, 29 U.S.C. § 1451(b), provides that the failure to make withdrawal liability payments when due shall be treated as a contribution delinquency under Section 515 of ERISA, 29 U.S.C. § 1145.

At the time of Dieknowlogist's withdrawal from the Fund, Accurate Die and Perfect Supply were trades or businesses under common control with Dieknowlogist within the meaning of Section 414(c) of the Internal Revenue Code, 26 U.S.C. § 414(c), and the regulation thereunder, Treasury Regulation Section 1.414(c)-2. Upon information and belief, John Passantino owned 100% of the stock of Dieknowlogist as of the date of Dieknowlogist's withdrawal from the Fund. For purposes of determining control group status, on information and belief, as of the date of Dieknowlogist's withdrawal from the Fund, John Passantino owned 100% of Accurate Die and Perfect Supply after all shares, interests, and entitlements, including those of his wife, Patricia Passantino, are imputed to him as required by Treas. Reg. § 1.414(c)- 4(b)(5).

2

Pursuant to the Fund's Delinquency Policy, Defendant owes $177,102.38 for the withdrawal liability. Additionally, pursuant to ERISA Section 502, 29 U.S.C. § 1132, Defendant also owes interest, liquidated damages, and the Fund's attorneys' fees and costs.

**3. Defendant's Theory of the Case:** Defendants admit some amount of withdrawal liability exists on the part of Dieknowlogist. Dieknowlogist ceased its operations in 2008 on account of the downturn in the economy. The company currently has a negative equity with no income and no net profit.

Defendants Accurate Die and Perfect Supply are small companies with marginal profits. Accurate Die consists of two employees, one of which is Mr. Passantino. Neither Accurate Die nor Perfect Supply has the requisite cash or assets to satisfy a judgment anywhere near the amount currently sought by Plaintiffs. What few assets the companies do possess are, in large part, subject to the security interests of creditors who are prior in time to Plaintiffs. Mr. Passantino cannot be held personally liable for any of the companies' debts. The small amount of revenue earned by both Accurate Die and Perfect Supply is the only source from which payment to Plaintiffs could derive. If these companies are forced to liquidate, this revenue will cease, leaving Plaintiffs unsatisfied.

Therefore, Defendants believe it is in the best interests of all parties to settle this case without going to trial. Defendants have attempted to accomplish this through several settlement offers, each of which, if accepted, would have placed

3

the Fund in at least the same position, if not better, than it would have been had Dieknowlogist not ceased making its payments in 2009. Despite these offers, to date, Plaintiffs have been unwilling to reach a compromise. Defendants ask this Court to send this case to mediation with a Magistrate Judge to save both parties from unnecessarily wasting through litigation the same precious resources that would be better allocated to satisfying Dieknowlogist's outstanding withdrawal liability.

    **4. Identification of the Issues:** Liability and damages are disputed.

    **5. Need for Other Claims or Special Issues Under Rules 13-15, 17-21, and Rule 23 of the Federal Rules of Civil Procedure:** The parties do not anticipate any counter-claims, cross-claims, or third-party claims.

    **6. Witnesses:** The parties will disclose witnesses in their initial disclosures.

    **7. Initial Disclosures and Discovery:** Pursuant to Fed. R. Civ. P. 26(a)(1), all parties will make their initial disclosures by **August 15, 2011**.

    The parties will complete all written discovery and depose all fact witnesses before **December 15, 2011**. Discovery is not stayed during any dispositive motion. Prior to the filing of any discovery-related motion, the parties will confer in good faith and if unable to resolve their differences, will conduct a telephone conference with Magistrate Judge Brown. The parties do not anticipate the need for any expert witnesses.

**8. Dispositive Motions:** The parties shall file all dispositive motions on or before **January 16, 2012**. Responses to dispositive motions shall be filed within **28 days** after service of the dispositive motion, **February 13, 2012**. Optional replies shall be filed within **14 days** after service of the response, **February 27, 2012**. The motion and response memoranda shall not exceed **25 pages**, and any reply shall not exceed **five pages**, absent Court permission for longer pleading.  If dispositive motions are filed early, the response and reply dates are moved up accordingly.

**9. Motions to Amend:** The parties shall file all any motion to amend the pleadings as soon as possible after the party becomes aware of the grounds for the motion.

**10. Subsequent case management conferences:** A telephone conference with Magistrate Judge Brown to discuss case progress is set for **October 24, 2011, at 2:00 p.m.  To participate in the conference call, parties shall call 615-695-2851 at the scheduled time.**

**11. Alternative Dispute Resolution:** Defendants propose the parties pursue alternative dispute resolution in the form of a Judicial Settlement Conference before the Magistrate Judge. Plaintiffs do not oppose efforts to resolve the lawsuit through a mutually agreeable means of alternative dispute resolution.  The parties are working on a possible settlement.  If needed, the Magistrate Judge will schedule a settlement conference at their request.

**12. Consent to trial before Magistrate Judge Brown:** At

this time, the parties do not consent to trial before Magistrate Judge Brown.

**13. Target Trial Date:** The parties estimate that this nonjury trial will take two days, depending on what issues remain for trial. After consulting with Judge Nixon's courtroom deputy, this matter is set for trial on **July 10, 2012**, **at 9:00 a.m.** Judge Nixon will conduct the final pretrial conference on **June 29, 2012, at 10:00 a.m.** Judge Nixon will issue a separate order covering his requirements for the final pretrial conference and the trial.

It is so **ORDERED**.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge